UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LAKAISHA R. GALLAHER,            )
                                 )
         Plaintiff,              )
                                 )
v.                               )    No. 3:06-CV-326
                                 )    (Shirley)
SOUTHERN TUBE FORM, LLC,         )
et al.,                          )
                                 )
         Defendants.             )

## MEMORANDUM OPINION

This civil action is before the Court pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 12], for the consideration of the defendants' Motion for Summary Judgment. [Doc. 17.] The *pro se* plaintiff has failed to respond to the defendants' motion and the time for doing so has passed.[1] See L.R. 7.1(a), 7.2. The Court has carefully considered the pending motion along with the defendants' supporting briefs, affidavits, and the relevant pleadings. For the reasons set forth herein, the defendants' motion for summary judgment [Doc. 17] will be granted.

**I.    Relevant Facts**

As the Court is required to do in reviewing a motion for summary judgment, all facts will be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

[1]The plaintiff has filed a hand written proposed pre-trial order. [Doc. 19.] Given that the plaintiff is *pro se*, to the extent that her proposed pre-trial order can be considered a response to the pending motion, the Court will treat it as such.

The plaintiff, Lakaisha R. Gallaher ("Plaintiff"), submitted an application for employment with defendant Southern Tube Form, LLC ("STF") on August 29, 2005. [Doc. 17, Exhibit F.] Plaintiff did not indicate any limitations regarding work schedule in the application, nor did she indicate any specific position that she was applying for. [Id.] Defendant hired Plaintiff on or around September 2, 2005. [Doc. 17, Exhibit D at 10.] On that same day, Plaintiff signed a form acknowledging that she had received a copy of STF's Employee Handbook. [Doc. 17, Exhibit C.] The form also established that Plaintiff was being employed in an at-will capacity. [Id.] The Employee Handbook spells out STF's equal opportunity policy, as well as its anti-harassment and zero tolerance policies. [Id. at 3-5.]

Upon being hired, Plaintiff was assigned to work first shift during her sixty day probationary period. [Doc. 17, Exhibit B at ¶¶ 10-11.] It is STF's standard practice to assign new employees to first shift, because first shift contains the company's most experienced employees and the greatest number of supervisors, allowing a better training environment for new employees. [Id. at ¶¶ 12-13.] At the completion of the probationary period, a new employee would be subject to reassignment to a different shift, depending upon the needs of the company. [Id. at ¶ 10.] Plaintiff completed her probationary period on or around November 2, 2005. [Doc. 17, Exhibit D at 11.]

Soon after Plaintiff began her employment with the company, STF implemented a third shift on a temporary basis to meet increased customer demand. [Doc. 17, Exhibit A at ¶ 24.] The third shift was staffed on a voluntary basis, and all volunteers were guaranteed to be reinstated to their former shift once the third shift was discontinued. [Id. at ¶ 25.] By early November 2005, the increased customer demand had been met, eliminating the need for the third shift. [Id. at ¶ 27.] Thus, the third shift was discontinued and the third shift employees returned to their previous shifts

and positions. [Id. at ¶¶ 27-28.] After the dissolution of the third shift and the return of the third shift employees to their previous shifts, the first shift contained too many employees trained for "End-Fab" work, while the second shift contained two unfilled "End-Fab" positions. [Id. at ¶¶ 28-29.] In order to resolve this disparity, it was decided that two less senior but fully trained "End-Fab" employees from first shift should be moved to second shift. [Id. at ¶¶ 29-30.]

After a performance review by management, it was determined that Thomas Evans ("Evans"), a white male, and Plaintiff, an African-American female, should be transferred to second shift. [Doc. 17, Exhibit B at ¶¶ 17-22.] On Friday, November 11, 2005, members of STF management met separately with Evans and Plaintiff to discuss the transfer to second shift. [Id.] Evans refused to transfer to the second shift, at which point his employment was terminated. [Id. at ¶ 19.] Plaintiff met with her supervisor, Tommy McCool ("McCool"), and STF's Human Resources Manager, Jerry Riley ("Riley"). [Doc. 17, Exhibit D at 12.] When Plaintiff was informed that she had been selected to transfer to second shift, she advised McCool and Riley that she would have to arrange for child care before she could move. [Id. at 13.] Plaintiff was then asked to clock out and was escorted from the building. [Id. at 14.]

Plaintiff returned to work Monday, November 14, 2005, at approximately 7:00 a.m. [Id. at 15-17.] At approximately 9:00 a.m. that same day, Plaintiff was called into a meeting with Riley. [Id. at 17.] Plaintiff was asked if she had found childcare and if she would move to second shift. [Id. at 18.] Plaintiff indicated that she had not been able to find childcare so she could not move to second shift. [Id.] At that point Plaintiff's employment was involuntarily terminated and, after gathering her belongings, she was escorted out of the building. [Id. at 18-19.]

After Plaintiff's termination, two white females, Sheila Weaver ("Weaver") and Kathy Hyder ("Hyder"), were selected to move from first to second shift. [Doc. 17, Exhibit B at ¶ 32.] Both Hyder and Weaver agreed to the transfer to second shift and began their new shift assignments the next working day. [Id. at ¶ 33.]

On December 20, 2005, Riley mailed Plaintiff a letter indicating that a position was open that Plaintiff was qualified for and asking Plaintiff if she would like to return to work at STF. [Doc. 17, Exhibit L.] The letter was mailed to Plaintiff's last known address, but Plaintiff had subsequently moved and never received the letter. [Doc. 17, Exhibit D at 21-22.]

On November 14, 2005, Plaintiff filed a claim for unemployment benefits with the Tennessee Department of Labor and Workforce Development ("TDOL"). [Doc. 19.] On November 28, 2005, TDOL determined that Plaintiff had voluntarily terminated her employment with STF without good cause and her claim was denied. [Id.] Plaintiff filed an appeal of TDOL's decision on December 14, 2005. [Id.] On January 13, 2006, the Appeals Tribunal conducted a hearing on Plaintiff's appeal. [Id.] On January 17, 2006, the Appeals Tribunal ruled that Plaintiff was eligible for unemployment benefits because her employment with STF was involuntarily terminated and Plaintiff had not committed any form of misconduct, but rather was "discharged because she could not work second shift due to a lack of child care." [Id.]

On November 25, 2005, Plaintiff filed a charge of discrimination with the Tennessee Human Rights Commission ("THRC") and Equal Employment Opportunity Commission ("EEOC"). [Doc. 8, Exhibit A.] There is no further evidence before the Court of any additional action taken by Plaintiff in conjunction with her charge of discrimination, nor on the part of the THRC, nor the EEOC, nor is there any evidence Plaintiff ever received a right-to-sue letter.

4

On August 28, 2006, Plaintiff filed the instant *pro se* action, alleging the defendants had discriminated against her because of her race, causing her to be humiliated and to suffer emotional pain. [Doc. 1.] Plaintiff's complaint makes it difficult for the Court to determine the causes of action upon which plaintiff grounds her allegations and the laws under which she brings these claims. However, given the significant leeway afforded to *pro se* litigants, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court will assume for the purposes of the pending motions that plaintiff brings her claims under the Civil Rights Act of 1964, as codified at 42 United States Code Section 2000-e, the Tennessee Human Rights Act, as codified at Tenn. Code Ann. Section 4-21-401, as well as a state law claim for the intentional infliction of emotional distress.

On December 4, 2006, the defendants filed their answer, denying Plaintiff's allegations. [Doc. 8.] On July 10, 2007, the defendants filed the instant motion for summary judgment. [Doc. 17.] On August 3, 2007, Plaintiff filed a proposed pre-trial order. [Doc. 19.] On August 13, 2007, the defendants, treating Plaintiff's proposed pre-trial order as a response to their motion for summary judgment, filed a reply. [Doc. 20.] Plaintiff has not formally responded to the motion for summary judgment, and the time for doing so has passed. See L.R. 7.1(a), 7.2. Thus, this matter is now ripe for adjudication.

**II.** **Standard of Review**

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving

party. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., 475 U.S. at 587. To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Id. at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

It should be noted that the plaintiff has failed to respond to the defendants' motion for summary judgment and the time for doing so has passed. *See* L.R. 7.1(a), 7.2. Therefore, the only filings presented by the plaintiff in support of her claims are her complaint [Doc. 1] and her proposed pre-trial order. [Doc. 19.] These two documents, even if accepted as true for purposes of summary judgment, consist of allegations which are not acceptable proof under Rule 56. Mere notice pleading is not sufficient to defeat a well-pled summary judgment motion. See Garth v. University of Kentucky Medical Center, No. 92-5177, 1992 U.S. App. LEXIS 14677, at *3-4 (6th Cir. June 16, 1992) ("To survive a motion for summary judgment, [the plaintiff] was required to do

more than rest on her pleadings; she was required to demonstrate that a genuine issue for trial existed."); Teamsters Local Union No. 486 v. Andersen Sand and Gravel Co., No. 82-1124, 1983 U.S. App. LEXIS 13044, at *6 (6th Cir. May 11, 1983) ("Where the district court has afforded a party opposing summary judgment under Rule 56 an opportunity to set forth specific facts showing there is a genuinely disputed factual issue for trial and that opportunity has been ignored, summary judgment is appropriate if the movant has carried his burden of proof."). However, while the plaintiff has not formally responded to the motion for summary judgment, the Court must still analyze the record to determine if any genuine issues of material fact exist in this matter.

### III. Administrative Remedies

Generally, in order to bring a Title VII action in federal court a plaintiff must first file a timely charge of employment discrimination with the EEOC and next obtain a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); Puckett v. Tenn. Eastman Co., 889 F.2d 1481, 1486 (6th Cir. 1989). "Dismissal without prejudice is generally the appropriate remedy for a Title VII claim filed prematurely before administrative remedies are exhausted and a right-to-sue letter secured." McCarthy v. First American Title Ins. Co., No. 1:05-CV-409, 2006 U.S. Dist. LEXIS 25082, 2006 WL 1207995, *5 (W.D. Mich. May 1, 2006). Generally, in order to bring a Title VII action in federal court a plaintiff must first file a timely charge of employment discrimination with the EEOC and next obtain a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); Puckett v. Tenn. Eastman Co., 889 F.2d 1481, 1486 (6th Cir. 1989). "Dismissal without prejudice is generally the appropriate remedy for a Title VII claim filed prematurely before administrative remedies are exhausted and a right-to-sue letter secured." McCarthy v. First American Title Ins.

7

Co., No. 1:05-CV-409, 2006 U.S. Dist. LEXIS 25082, 2006 WL 1207995, *5 (W.D. Mich. May 1, 2006).

In the instant case, there is evidence that Plaintiff filed a timely complaint with the EEOC. [Doc. 8, Exhibit A.] However, there is no evidence that Plaintiff ever received a right-to-sue letter. Without some evidence that Plaintiff received a right-to-sue letter, or that there is some reason why that requirement should be waived, Plaintiff's Title VII claim should be dismissed for failure to exhaust her administrative remedies. However, given Plaintiff's *pro se* status, in an abundance of caution, the Court will assume *arguendo* that Plaintiff did receive a right-to-sue letter and will continue with the analysis of Plaintiff's claims.

**IV.    Discrimination Claims**

Plaintiff alleges that the defendants discriminated against her on the basis of her race in violation of the Civil Rights Act of 1964, as codified at 42 United States Code Section 2000-e, and the Tennessee Human Rights Act, as codified at Tenn. Code Ann. Section 4-21-401. The same analysis applies to both claims, thus the Court will focus on the Title VII claim. Thompson v. City of Memphis, 86 Fed. Appx. 96, 103 (6th Cir. 2004).

A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination. See Kline v. Tennessee Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997). In the instant case, Plaintiff has presented no direct evidence of discrimination, so the Court will assume that Plaintiff is proceeding under a theory of circumstantial evidence.

In analyzing the burdens associated with a claim of discrimination supported by circumstantial evidence of discrimination, the Sixth Circuit has held that:

> Under the circumstantial evidence approach, the familiar <u>McDonnell Douglas-Burdine</u> tripartite test is employed. This paradigm requires the plaintiff to establish a prima facie case of discrimination. To establish a prima facie case of discrimination, a plaintiff must show that 1) [s]he is a member of a protected class; 2) [s]he was qualified for [her] job and performed it satisfactorily; 3) despite [her] qualifications and performance, [s]he suffered an adverse employment action; and 4) that [s]he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside [her] protected class. If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." If the defendant carries this burden, then the plaintiff must prove that the proffered reason was actually a pretext to hide unlawful discrimination. The plaintiff may establish that the proffered reason was a mere pretext by showing that 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain the defendant's action. "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."

<u>Johnson v. University of Cincinnati</u>, 215 F.3d 561, 572-573 (6th Cir. 2000) (citations omitted).

### A. **Prima Facie Case**

Even taking the facts in the light most favorable to the plaintiff, Plaintiff cannot establish a prima facie case. The first element has been established, as Plaintiff is an African-American female, so she is a member of a protected class.[2] The second element, whether Plaintiff was qualified for the position and performed it satisfactorily, has also been established, as evidenced by the fact that the defendants sought to rehire Plaintiff when positions became available on the first

---

[2] The Court notes that Plaintiff has never alleged that she is a member of a protected class, but a copy of the charge of discrimination Plaintiff filed with the EEOC has been entered into evidence and that document does indicate Plaintiff's race. [Doc. 8, Exhibit A.]

9

shift. [Doc. 17, Exhibit L.] The third element, an adverse employment action, has been established, as Plaintiff's employment was terminated.

However, the fourth element, that she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside her protected class, has not been met. The facts show that a white male, Evans, was also terminated for the exact same reasons as Plaintiff, refusal to move to the second shift. It is true that two white females, Weaver and Hyder, were given the same choice to move to second shift and were not terminated, but both Weaver and Hyder agreed to the shift transfer, thus they are not similarly situated to Plaintiff. Had Evans been allowed to continue his employment after rejecting the transfer, or had Weaver or Hyder rejected the transfer and suffered no adverse consequences, then Plaintiff would be able to establish the fourth element of a prima facie case, but that is not the case here. Given that Plaintiff cannot establish a prima facie case, her claims of discrimination must be dismissed. However, even if Plaintiff were able to establish a prima facie case, her discrimination claims would still fail.

### B. Non-discriminatory Reason

Even if Plaintiff could establish a prima facie case, the defendants have established a legitimate, non-discriminatory reason for firing Plaintiff. The defendants have established that Plaintiff was terminated because there was an over-staffing situation on first shift and an under-staffing situation on second shift. Plaintiff was given the option to move to second shift, which she did not accept. Even assuming that Plaintiff did not realize that a failure to find childcare would endanger her continued employment, there is absolutely no evidence that the decision to terminate Plaintiff's employment was for any reason other than that they simply had too many employees on first shift and wanted to move two of those excess employees to second shift. Tennessee is an at-

will state, thus an employee may be terminated for good cause, bad cause, or no cause at all, so long as the termination is not motivated by some discriminatory animus. Harney v. Meadowbrook Nursing Ctr., 784 S.W.2d 921, 922 (Tenn. 1990). Plaintiff has not shown that the defendants' decision to terminate her employment was motivated by such an animus, nor has she presented any evidence that the decision to terminate her because of the over-staffing and under-staffing situation was a pretext for discrimination. In the absence of such evidence, Plaintiff's discrimination claims must fail. Accordingly, the defendants' motion [Doc. 17] will be **GRANTED** with respect to Plaintiff's discrimination claims, and the same will be **DISMISSED with prejudice**.

### V. Intentional Infliction of Emotional Distress

In light of the Court's ruling on Plaintiff's discrimination claims as set forth above, the Court will decline to continue to exercise supplemental jurisdiction over Plaintiff's remaining state law cause of action. 28 U.S.C. § 1367(c). Accordingly, Plaintiff's claim of intentional infliction of emotional distress will be **DISMISSED without prejudice**.

### VI. Conclusion

For the reasons set forth herein, the defendants' motion for summary judgment [Doc. 17] will be **GRANTED**. Plaintiff's claims of discrimination will be **DISMISSED with prejudice**, while Plaintiff's claim of intentional infliction of emotional distress will be **DISMISSED without prejudice**.

**ORDER ACCORDINGLY.**

**ENTER:**

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge